1              UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF WASHINGTON

3     _____

      LAURA VANCE,                          )
4                                           )
                       Plaintiff(s),        )
5                                           )
          vs.                               )   CV-10-036-LRS
6                                           )
      MARK T. CASE, and JANE DOE            )
7     CASE, husband and wife;               )
      SUTTELL & HAMMER, P.S.;               )
8     SUTTELL & ASSOCIATES, P.S.;           )
      CAITLIN R. FINLEY and JOHN DOE        )
9     FINLEY, wife and husband; and         )
      MALISA L. GURULE and JOHN DOE         )
10    GURULE, wife and husband,             )
                                            )
11                     Defendant(s).        )

12    _____

      VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION OF
13
                         CAITLIN FINLEY
14
15    _____

16                       9:08 A.M.

17                  SEPTEMBER 17, 2010

18          1200 FOURTH AVENUE, SUITE 1820

19                SEATTLE, WASHINGTON

20

21

22

23

24    REPORTED BY: CARLA R. WALLAT, CCR 2578

25

EXHIBIT

13

PENGAD 800-631-6989

Yamaguchi Obien Mangio, LLC,  Reporting & Video  *  www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-37-

1                    A P P E A R A N C E S

2

3      FOR THE PLAINTIFF:

4            MICHAEL D. KINKLEY
             Michael D. Kinkley, P.S.
5            4407 N. Division, Suite 914
             Spokane, WA 99207
6            209.484.5611
             mkinkley@qwestoffice.net
7

8      FOR THE DEFENDANTS:

9            CARL E. HUEBER
             Winston & Cashatt
10           601 W. Riverside, Suite 1900
             Spokane, WA 99201
11           509.838.6131
             chueber@winstoncashatt.com
12

13     ALSO PRESENT:  CAT RENY, Video Operator

14

15

16                         *  *  *

17     The parties are entering into agreement regarding a

18     process for claiming confidentiality.  The parties have

19     agreed to enter a protective order and certain portions

20     of this deposition will be marked confidential by

21     counsel.

22                         *  *  *

23

24

25

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-38-

```
1                     I N D E X

2

3   EXAMINATION BY:                              PAGE(S)

4    MR. KINKLEY                                     5

5

6

7

8

9

10  EXHIBITS FOR IDENTIFICATION                  PAGE

11      1   Email from Laugen to Wilkinson,        13

12          11/10/2009, Bates Suttell 46-47

13      2   Email from Laugen to Wilkinson,

14          11/10/2009, Bates Suttell 48-49

15      4   Declaration of Mark T. Case

16    100   Motion and Declaration for Order for    9

17          Examination and Order to Show Cause for a

18          Judicial Subpoena signed by Caitlin Finley

19    101   Motion and Declaration for Order for

20          Examination and Order to Show Cause for a

21          Judicial Subpoena signed by Malisa L.

22          Gurule

23    102   Collection Notes, Bates Suttell 1-19   14

24

25
```

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-39-

1              SEATTLE, WASHINGTON; SEPTEMBER 17, 2010

2                            9:08 A.M.

3                            --oOo--

4

5              THE VIDEOGRAPHER:  This is Segment 1 and

6    the time is 9:08 a.m.  My name is Cat Reny.  The date

7    is Friday, September 17th, 2010, and we are at

8    Yamaguchi Obien Mangio Court Reporting and Video.  The

9    case is Laura Vance versus Case, Suttell & Hammer PS,

10   et al., in the United States District Court for the

11   Eastern District of Washington, Case Number

12   CV-10-036-LRS.  This is the deposition of defendant

13   Caitlin Finley.

14             This deposition is being called by Michael D.

15   Kinkley and Heath Irvine on behalf of the plaintiff.

16   Will everyone please identify themselves and whom they

17   represent.

18             MR. KINKLEY:  Mike Kinkley for the

19   plaintiff.

20             MR. HUEBER:  I'm Carl Hueber, I

21   represent the defendants and the deponent Caitlin

22   Finley.

23             THE VIDEOGRAPHER:  The reporter may

24   swear in the witness now.

25                        CAITLIN FINLEY,

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-40-

1          MR. KINKLEY:  Do you still have the one

2     from yesterday, Carl?  I used it yesterday.

3          MR. HUEBER:  Yeah, I got it.

4     Q.   (BY MR. KINKLEY)  Do you recognize that

5     document?

6     A.   Yes, I know what it is.

7     Q.   Would you turn to the third page.  Is that

8     your signature?

9     A.   Yes.

10    Q.   What date was that signed?

11    A.   February 6, 2009.

12    Q.   Would you turn to the second page.  And do you

13    see where it says declaration?

14    A.   Yes.

15    Q.   The second sentence, would you read that for

16    us, please?

17    A.   Do you want to start -- where it starts

18    declarant?

19    Q.   Yes, please.

20    A.   Declarant is an attorney for the judgment

21    creditor and is authorized to make this declaration.

22    Q.   Okay.  And the declarant was you; is that

23    correct?

24    A.   Yes.

25    Q.   And you were making that declaration, if you

Yamaguchi Obien Mangio, LLC,  Reporting & Video  *  www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-41-

1    turn back to Page 3, subject to the penalty of perjury

2    under the laws of the state of Washington, correct?

3         A.   Yes.

4         Q.   And you -- it is true that you were the

5    attorney for the judgment creditor, is it not?

6         A.   I was one of the attorneys.

7         Q.   Okay.  You were "an" attorney for the judgment

8    creditor; that part is true, correct?

9         A.   (Witness nodding.)

10        Q.   We didn't go over rules.  I sometimes forget

11   to do it with other attorneys, but you'll need to speak

12   audibly.  You nodded for me, which is normally okay in

13   conversation, but in a deposition, you need to speak,

14   verbalize your thoughts.

15        A.   Okay.

16        Q.   It's helpful if you say yes or no rather than

17   uh-huh or huh-uh.  It's helpful if you do as you have

18   been doing, let me finish my question before you begin

19   to answer.  Sometimes my questions can become confusing

20   the way I word them; if that's true, you can ask me to

21   clarify it or rephrase it because I want to be sure

22   that you understand what I'm asking you when you

23   answer.  Most times I will rephrase.

24             Would you look at the next sentence, please,

25   beginning with judgment creditor.

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-42-

1   you Exhibit 102.  Is that the system you're -- those

2   notes are from the system you're referring to?

3        A.   Yes, it looks like it.

4        Q.   And I think people have referred to it with

5   various names.  If I could see it for a second.

6             Actually, I've got one here.  Never mind.

7   Keep that one.

8             I'm trying to remember what some other people

9   chose to call it, it was J something.  The

10  manufacturer's name.

11            Well, let's just call it the collector's notes

12  because I don't have the -- people have called it

13  various things based on the name of the software and

14  the software company.  But if you'd look through that

15  Exhibit 102 for a minute, does that look like the

16  collector's notes that you would see on screen?

17       A.   Yes.

18       Q.   Okay.  And you wouldn't typically use the

19  paper and print it out and use the paper, you would

20  typically go in the computer and look on screen; is

21  that correct?

22       A.   Usually, yes.

23       Q.   All right.  When you would be signing

24  supplemental proceedings, motions and declarations,

25  would that be a task that was assigned to you and no

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-43-

1  other attorney, typically?

2          MR. HUEBER:  I'm going to object to the

3  form.  I'm a little confused.

4      Q.  (BY MR. KINKLEY)  All right.  Was there a

5  delegation of responsibilities at Suttell & Associates

6  when you were there that some attorneys were signing

7  more of the supplemental proceedings, some of them were

8  signing more of the defaults, some of them were

9  assigned to sign other things or do other things?

10     A.  Well, I would say the attorneys all shared

11 responsibilities, but there would be some pleadings

12 that an attorney would be primarily responsible for

13 signing.

14     Q.  Okay.  And would it be fair to say that in

15 February of 2009, you were one of the attorneys that

16 was primarily responsible for signing supplemental

17 proceedings?

18     A.  Yes.

19     Q.  And when I say supplemental proceedings, I

20 mean the motion and declaration and the order

21 presenting supplemental proceedings and so forth, the

22 whole package; is that correct?

23     A.  Yes.

24     Q.  And that supplemental proceedings package is

25 produced by a non-attorney Suttell employee from the

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-44-

1    computer system, correct?

2        A.    Can you say that -- by a non-attorney

3    employee?

4        Q.    Yes, right.

5        A.    Yes, I believe so.

6        Q.    A person who is not an attorney but is an

7    employee of Suttell would produce a package for

8    supplemental proceedings, correct?

9        A.    Right.  She would print the documents.

10       Q.    Right.  And the documents would come to you

11   printed with everything filled in?

12       A.    "Everything filled in," what do you mean?

13       Q.    It would come to you in the form that you have

14   it there in Exhibit 100; isn't that true?

15       A.    Yes.

16       Q.    Other than your signature, obviously?

17       A.    Yes.

18       Q.    Okay.  And when they would bring you a

19   supplemental proceedings motion and declaration

20   package, they would generally bring you 20, 30 or how

21   many?

22       A.    It depended on the day, it depended for what

23   county.

24       Q.    Okay.

25       A.    It varied.  Sometimes it would be 20,

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-45-

1      A.   D says POE is inactive and she is not employed

2   there any longer.   Husband is cashing out pension and

3   they will PIF, I believe pay in full, at that time.

4   Don't have exact date.   WCB to follow up.

5      Q.   So what does the D stand for?

6      A.   Defendant.

7      Q.   Okay.

8      A.   Or debtor.

9      Q.   And what does POE stand for?

10     A.   I believe place of employment.

11     Q.   Okay.   And what does WCB stand for?

12     A.   I don't know.   Maybe the person's initials who

13  would be the one following up.   I don't know.

14     Q.   Okay.   If you had seen that note, would you

15  have signed the declaration for the supplemental

16  proceedings without doing something more?

17     A.   If there -- regardless if there was an earlier

18  note up there, if at the bottom of the notes there was

19  still an outstanding balance and it was scheduled, I

20  would still sign it.

21     Q.   Okay.   So if -- even if there were notes in

22  there that said someone had paid in full but if at the

23  bottom of the notes --

24     A.   Well, it doesn't say they paid in full, it

25  says they will pay in full.

Yamaguchi Obien Mangio, LLC,  Reporting & Video  *  www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-46-

1       Q.   I understand that.  We'll talk about some more

2   things there.

3            Would you turn to the page which tells --

4   informs you what the balance is on the account.  What

5   page would you typically look at?

6       A.   Well, typically I believe the screen shot

7   would have it at the bottom.

8       Q.   Okay.  What do you mean by a screen shot?

9   Pretend we don't know anything about your system.

10      A.   Well, it's been a while since I've seen this

11  system --

12      Q.   I understand.

13      A.   -- so I can't tell you exactly.  You would

14  maybe be in this notes screen, but I believe you could

15  still be in the notes screen and there's financial

16  information listed at the bottom of the screen where it

17  shows basically, I believe, like a judgment date and

18  the balance on the account.

19      Q.   And typically that's what you would rely on

20  rather than the notes themselves regarding the account?

21      A.   Well, you would rely -- you would rely on

22  everything, but you -- I would go off of -- I'm

23  guessing -- you have to go off of everything in the

24  file, but if I was going to be signing a supplemental

25  proceedings -- which a lot of times you go off of the

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-47-

1          MR. KINKLEY:  I'll rephrase it.

2          MR. HUEBER:  We've got a problem here,

3    Mike, and I think the problem may be your definition of

4    contemporaneous time records includes a number of

5    things, and are you asking her to limit her answer only

6    if it included every one of those things or just some

7    of those things?

8          MR. KINKLEY:  Yes, and that's what I'm

9    trying to make clear.  I'm going to give it a label so

·10   we're on the same page.

11      Q.   (BY MR. KINKLEY)  Because I think what you're

12   telling me is sometimes you kept track of what you did

13   because you would enter into the system that is --

14   results in the printout in 102; is that what you're

15   trying to tell me?

16      A.   Yes.

17      Q.   Okay.  Other than putting notes into the

18   system that results in collector's notes like 102, you

19   didn't keep any records of your time on collection

20   matters; is that correct?

21      A.   That's correct.

22      Q.   Okay.  And you didn't keep notes of your

23   activities in collection matters other than in the

24   system that resulted in the production of the

25   collector's notes in 102?

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-48-

1    A.    No.

2    Q.    So --

3    A.    I didn't -- I didn't keep records outside of

4    what I would put in here.

5    Q.    All right.  All I'm trying to do is narrow our

6    universe down.  So everything that you would have kept

7    track of on the Vance case would be in Exhibit 102,

8    other than the court documents and things like that?

9    A.    Right.

10    Q.    So -- and as far as Exhibit 102 goes,

11    typically you wouldn't even review all of those notes,

12    you would simply look at the, the financial screen that

13    comes up first because that's the most efficient way to

14    determine if a judgment was still outstanding, correct?

15    A.    Correct.

16    Q.    Is that the way you were trained to do it at

17    Suttell?  Is that the way they taught you?

18    A.    I believe so, yes.

19    Q.    How many declarations -- motions and

20    declarations for supplemental proceeding do you believe

21    that you signed while at Suttell?

22    A.    I really don't know.

23    Q.    Okay.

24    A.    I can't even estimate.

25    Q.    It would be definitely more than 100, though?

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-49-

1    No, 102.

2                    MR. HUEBER:  I got to object because I

3    don't know what you're asking, Mike.

4        Q.   (BY MR. KINKLEY)  Do you know the practical

5    aspects of -- do you know how the person who is a

6    non-attorney employee of Suttell goes about preparing

7    Exhibit 100?

8        A.   No.

9        Q.   Okay.  Because I was going to ask you a series

10   of questions about that, but if you don't know -- all

11   you know is that it's brought to you, correct?

12       A.   Yes.

13       Q.   You don't know if the data is merged into an

14   electronic form and so forth?

15       A.   I know there are merge fields.

16       Q.   Okay.  But you don't know which ones are

17   which?

18       A.   You know, I could look at something and maybe

19   imagine that an account number or the file number would

20   be a merge field.

21       Q.   Okay.

22       A.   The debtor's name would likely be a merge

23   field, but which ones were and which ones weren't, I

24   couldn't tell you for sure.

25       Q.   Okay.  And when you signed the motion and

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-50-

1    declaration for supplemental proceeding, it was --

2    other than the name of the debtor and the county and

3    the number, they were all the same?

4          A.    The declaration, yes, would be identical.

5          Q.    Okay.

6          A.    The text of the document.

7          Q.    The text of the document were all identical,

8    correct?

9          A.    Yes, I believe so.

10         Q.    And then specific identifying data like name

11   of the plaintiff, name of the defendant, the number,

12   those would be, of course, different?

13         A.    Yes.

14         Q.    But other than that, the motions and

15   declarations were all identical?

16         A.    Yes.

17         Q.    What is your opinion -- what do you believe, I

18   should say, is the standard under Washington law for

19   issuing a supplemental proceeding?

20               MR. HUEBER:   I'm going to object to the

21   form.   You're asking her for legal conclusions.

22               MR. KINKLEY:   Actually I'm not.   I'm

23   asking what her understanding of a legal principle is.

24               MR. HUEBER:   I'm assuming you don't want

25   to debate my objection, but I'm --

Yamaguchi Obien Mangio, LLC,  Reporting & Video  *  www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-51-

1  Q. They seem to be using three letters.

2  A. Okay.  So maybe it would have been CRF.

3  Q. For Caitlin R. Finley?

4  A. Yes.

5  Q. So let's look through that.  Page 6, I don't

6 see any CRF.  Page 7, I don't see any.  If you could

7 just go page by page and see if you see your initials

8 somewhere.

9  A. (Witness complies.)

10  Q. Okay, did you see your initials anywhere

11 there?

12  A. No.

13  Q. So nothing that you did on the file was noted

14 in the file, in the computer system; isn't that true?

15  A. Correct.

16  Q. Okay.  And isn't it also true that typically

17 under the way Suttell did things while you were working

18 there, reviewing and signing a supplemental proceedings

19 motion and declaration package would not be something

20 that you would note into the notes, correct?

21  A. Typically.

22  Q. Typically you would not note --

23  A. If -- you're saying after I signed the

24 document, did I go in and make a note that I signed the

25 document?  I reviewed it and I signed it?

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-52-

1    anything about the Vance file that you know, other than

2    what's in the collector's notes --

3        A.    No.

4        Q.    -- and the documents?

5        A.    What I have subsequently found out, but, no.

6        Q.    Okay.  If you had known that the judgment had

7    been paid in full, you would not have signed under

8    penalty of perjury a statement that the judgment was

9    unsatisfied, would you?

10        A.    Right, if I had known.

11        Q.    All right.  And you were only following the

12    procedures that were given to you by Suttell law firm

13    when you did sign that declaration?

14        A.    Right.  I was following procedures and relying

15    on the work product of others.

16        Q.    All right.  And specifically, you were relying

17    on someone to have correctly entered whether or not the

18    judgment was paid?

19        A.    Yes.

20        Q.    And typically the person entering whether or

21    not a judgment had been paid would be a non-attorney

22    employee of Suttell, correct?

23        A.    I don't know.  But I know there was an

24    accounting department.

25        Q.    All right.  And when you say accounting

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-53-

1  owed.

2      Q.   Right.  But there are more parts to this

3  account than just the financial summary screen,

4  correct?

5      A.   Correct.

6      Q.   There are notes as well, correct?

7      A.   Correct.

8      Q.   And the procedure that you were instructed to

9  follow was to generally just look at the financial

10  summary screen and not review all of the 20 pages or so

11  of notes?

12      A.   Correct.

13      Q.   Okay.  It would be pretty time consuming if

14  you reviewed 20 pages of notes, single spaced, line by

15  line, before signing a supplemental proceedings

16  declaration, wouldn't it?

17      A.   Yes.

18      Q.   And the volume that you were expected to

19  produce really wouldn't have allowed you that amount of

20  time to do that, correct?

21      A.   Correct.

22              MR. KINKLEY:  All right.  No other

23  questions.  And thank you for admitting that -- oh, off

24  the record.  I'm sorry.

25              THE VIDEOGRAPHER:  We are now off the

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-54-

 1    record at 9:49 a.m.   This is the end of Segment

 2    Number 1.

 3                     (Deposition concluded at 9:49 a.m.)

 4                     (Signature was reserved.)

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Yamaguchi Obien Mangio, LLC,  Reporting & Video  *  www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-55-

```
1                   CORRECTION & SIGNATURE PAGE

2    RE:    LAURA VANCE vs. MARK T. CASE
            USDC, EASTERN DISTRICT OF WA; CV-10-036-LRS
3           CAITLIN FINLEY; TAKEN SEPTEMBER 17, 2010
                       REPORTED BY:   CARLA R. WALLAT
4
            I, CAITLIN FINLEY, have read the within
5    transcript taken September 17, 2010, and the same is
     true and accurate except for any changes and/or
6    corrections, if any, as follows:

7

8    PAGE/LINE              CORRECTION               REASON

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22       Signed at _____, Washington,

23   on this date: _____.

24             _____

25             CAITLIN FINLEY
```

Yamaguchi Obien Mangio, LLC,  Reporting & Video  *  www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-56-

1    REPORTER'S CERTIFICATE

2

3        I, CARLA R. WALLAT, the undersigned Certified Court

4    Reporter pursuant to RCW 5.28.010 authorized to administer

5    oaths and affirmations in and for the State of Washington, do

6    hereby certify:

7        That the sworn testimony and/or proceedings, a

8    transcript of which is attached, was given before me at the

9    time and place stated therein; that any and/or all witness(es)

10   were duly sworn to testify to the truth; that the sworn

11   testimony and/or proceedings were by me stenographically

12   recorded and transcribed under my supervision, to the best of

13   my ability; that the foregoing transcript contains a full,

14   true, and accurate record of all the sworn testimony and/or

15   proceedings given and occurring at the time and place stated

16   in the transcript; that I am in no way related to any party to

17   the matter, nor to any counsel, nor do I have any financial

18   interest in the event of the cause.

19       WITNESS MY HAND AND DIGITAL SIGNATURE this 24th day of

20   September, 2010.

21   *Carla R. Wallat*

22   CARLA R. WALLAT
     Washington State Certified Court Reporter, #2578
23   cwallat@yomreporting.com

24   **Click Link to Verify Signature:**

25   **(Https://digitalid.verisign.com/services/client/index.html)**

Yamaguchi Obien Mangio, LLC, Reporting & Video * www.yomreporting.com
1200 Fifth Avenue, Suite 1820, Seattle, Washington 98101 * 206.622.6875 * 1.800.831.6973

-57-